# ORIGINAL

VOLUME:  I
PAGES:  1-207
EXHIBITS:  1-70

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 1:10-CV-10601-DJC

NINA SHERVIN, M.D.,                    )
      Plaintiff,                      )
                                 )
                                 )
v.                                     )
                                 )
PARTNERS HEALTHCARE SYSTEM,            )
INC.; THE PRESIDENT AND                )
FELLOWS OF HARVARD COLLEGE             )
(HARVARD MEDICAL SCHOOL);              )
MASSACHUSETTS GENERAL HOSPITAL         )
PHYSICIANS ORGANIZATION;               )
JAMES H. HERNDON, M.D.; AND            )
HARRY E. RUBASH, M.D.,                 )
      Defendants.                     )

        DEPOSITION OF NINA SHERVIN, M.D., a
witness called on behalf of the Defendants
Partners Healthcare System, Inc., and
Massachusetts General Hospital Physicians
Organization, pursuant to the applicable
provisions of the Massachusetts Rules of Civil
Procedure, before Margaret G. Oliver, Notary
Public in and for the Commonwealth of
Massachusetts, at the offices of Holtz & Reed,
LLP, 225 Friend Street, Suite 201, Boston,
Massachusetts, on Friday, April 27, 2012,
commencing at 10:20 a.m.

Case 1:13-mc-00023-UA-LPA   Document 1-2   Filed 04/25/13   Page 1 of 25

1   hard under conditions that nobody should have to

2   work under, conditions that no woman or man should

3   be exposed to. And I thought I had done a really

4   good job.

5         Dr. Kasser then continued to say that I

6   could still be fired, that I'm going to be

7   watched, that he is going to -- that they are --

8   the Executive Committee is going to continue to

9   probe at residents to find any fault with me,

10   evaluate me by residents and attendings. And that

11   was the gist of that meeting, which was not

12   positive. It didn't make me feel real good.

13         Dr. Kasser also told me that me

14   challenging probation, the institution of

15   probation and the continuation and extension of

16   probation put me at risk for me being able to sit

17   for my oral boards. I didn't understand what that

18   meant at the time. I didn't understand the peer

19   review process, and I didn't understand what that

20   meant. But it was a threat. I understood that.

21   And I understand it now.

22         So coming off probation, I would think

23   that my life would be better, but it wasn't. The

24   retaliatory atmosphere continued. Residents were

C E R T I F I C A T E
COMMONWEALTH OF MASSACHUSETTS
MIDDLESEX, SS.

I, Margaret G. Oliver, Notary Public in
and for the Commonwealth of Massachusetts, do
hereby certify that NINA SHERVIN, M.D., the
witness whose deposition is hereinbefore set
forth, was duly sworn by me and that such
deposition is a true record of the testimony given
by the witness.

I further certify that I am neither
related to or employed by any of the parties
hereto or counsel to this action, nor am I
financially interested in the outcome of this
action.

In witness whereof, I have hereunto set my
hand and seal this 9th day of May 2012.

*Margaret G. Oliver*

Margaret G. Oliver
Notary Public
My commission expires:  May 18, 2018

THE FOREGOING CERTIFICATION OF THIS TRANSCRIPT
DOES NOT APPLY TO ANY REPRODUCTION OF THE SAME BY
ANY MEANS UNLESS UNDER THE DIRECT CONTROL AND/OR
DIRECTION OF THE CERTIFYING REPORTER.

1         UNITED STATES DISTRICT COURT

2         DISTRICT OF MASSACHUSETTS

3  Civil Action No. 1:10-cv-10601-DJC

4  - - - - - - - - - - - - - - - - - - - - - - -x

5  NINA SHERVIN, M.D.,

6            Plaintiff,

7     v.

8  PARTNERS HEALTHCARE SYSTEM, INC., THE PRESIDENT

9  AND FELLOWS OF HARVARD COLLEGE (THE HARVARD

10  MEDICAL SCHOOL), MASSACHUSETTS GENERAL

11  PHYSICIANS ORGANIZATION, INC., JAMES H. HERNDON,

12  M.D., AND HARRY E. RUBASH, M.D.,

13           Defendants.

14  - - - - - - - - - - - - - - - - - - - - - - -x

15      CONTINUED DEPOSITION OF NINA SHERVIN, M.D.,

16  a witness called by and on behalf of the

17  Defendants, taken pursuant to the Federal Rules

18  of Civil Procedure, before Daria L. Romano, RPR,

19  CRR and Notary Public in and for the

20  Commonwealth of Massachusetts, at Holtz & Reed,

21  LLP, 225 Friend Street, Boston, Massachusetts,

22  on Wednesday, December 19, 2012, commencing at

23  9:47 a.m. to 3:30 p.m.

24

| | |
|---|---|
| 11:23:06 1 | Q.    -- in terms of impairing your |
| 11:23:08 2 | employment opportunities? |
| 11:23:09 3 |              MS. ZUCKER:   Other than what she's |
| 11:23:11 4 | already stated? |
| 11:23:12 5 | A.    Other than everything I said before? |
| 11:23:14 6 | Q.    Yes. |
| 11:23:14 7 | A.    I can't think of anything else because |
| 11:23:16 8 | I listed a fair number of things between my last |
| 11:23:18 9 | deposition and today. |
| 11:23:24 10 | Q.    You mentioned that the way in which |
| 11:23:28 11 | you were treated by the defendants during your |
| 11:23:30 12 | probation while you were at MGH may have also, |
| 11:23:35 13 | you used the word possibly, affected you sitting |
| 11:23:38 14 | for the boards? |
| 11:23:39 15 | A.    Yes. |
| 11:23:40 16 | Q.    Do you believe that the defendants |
| 11:23:43 17 | interfered with your ability to sit for the |
| 11:23:46 18 | boards? |
| 11:23:46 19 | A.    It's possible. |
| 11:23:47 20 | Q.    Tell me what you believe. |
| 11:23:49 21 | A.    I think it's possible.   That's my |
| 11:23:51 22 | belief. |
| 11:23:51 23 | Q.    Let me reask. |
| 11:23:52 24 |              Tell me what facts you are aware of |

| 11:23:54 | 1 | that cause you to believe that it's possible. |
| 11:23:56 | 2 | A.    I received a letter from the boards |
| 11:23:58 | 3 | stating that my boards for July of 2012 have |
| 11:24:07 | 4 | been deferred based on the peer-review |
| 11:24:11 | 5 | information received. |
| 11:24:13 | 6 | Q.    Okay.  Do you know whether that |
| 11:24:16 | 7 | peer-review information was from any of the |
| 11:24:19 | 8 | defendants? |
| 11:24:19 | 9 | A.    I don't know.  It may have been. |
| 11:24:20 | 10 | Q.    It's true that you're the one who |
| 11:24:25 | 11 | identifies peer evaluations for the board, |
| 11:24:27 | 12 | correct? |
| 11:24:27 | 13 | MS. ZUCKER:  Objection. |
| 11:24:28 | 14 | A.    No, not necessarily. |
| 11:24:29 | 15 | Q.    Isn't that how it worked in your case? |
| 11:24:30 | 16 | A.    Not necessarily. |
| 11:24:31 | 17 | Q.    Did you not submit to the board a list |
| 11:24:33 | 18 | of physicians and other healthcare providers |
| 11:24:36 | 19 | from whom they could solicit evaluations? |
| 11:24:39 | 20 | A.    Yes. |
| 11:24:40 | 21 | Q.    Yes? |
| 11:24:41 | 22 | A.    Yes, but the board has a policy of |
| 11:24:43 | 23 | contacting all orthopedic surgeons who are board |
| 11:24:46 | 24 | certified. |

11:24:46  1        Q.    Well, let's break this down.

11:24:48  2                MS. ZUCKER:    Objection.    Let her

11:24:49  3    answer the question.

11:24:50  4    BY MR. HOLTZ:

11:24:52  5        Q.    Go ahead.

11:24:52  6        A.    The board has a policy of contacting,

11:24:54  7    and I was told this when I was on probation by

11:25:00  8    Dr. Caster, and I think I may have mentioned

11:25:02  9    this in my last deposition, the board has a

11:25:05 10    policy of notifying all orthopedic surgeons who

11:25:09 11    are board certified already of the list of

11:25:12 12    candidates who are about to appear for the

11:25:14 13    boards the following year; for instance, July of

11:25:16 14    2012.

11:25:18 15                And they ask for any information that

11:25:24 16    those board certified orthopedic surgeons can

11:25:27 17    provide to them with regards to professionalism,

11:25:30 18    ethical standards, I believe interpersonal

11:25:33 19    skills but I'm not sure but things of that

11:25:34 20    nature.

11:25:34 21        Q.    Do you know whether the board did that

11:25:36 22    here or not?

11:25:36 23        A.    They do it every year is my

11:25:38 24    understanding.

11:25:38  1          Q.    So in your case, just your case, do

11:25:40  2    you know whether the board did that?

11:25:43  3          A.    It's my understanding that the board

11:25:45  4    does that every year.

11:25:47  5                And the list of the candidates goes

11:25:49  6    out and is actually published on the Web site.

11:25:52  7    And I did get a list, and my name was on that

11:25:54  8    list.

11:25:54  9          Q.    Are you aware of any negative

11:25:57 10    assessments sent into the board by any of the

11:26:02 11    defendant physicians?

11:26:03 12                MS. ZUCKER:   Objection.

11:26:03 13          A.    I am not aware of anything specific,

11:26:06 14    no.

11:26:08 15          Q.    Okay.  You did provide a list of

11:26:12 16    referrals as well, correct?

11:26:14 17          A.    The board also asks for a list of

11:26:18 18    people who work in the community who are

11:26:21 19    familiar with your work or who are also board

11:26:25 20    certified orthopedic surgeons.

11:26:26 21          Q.    Did you comply with that request?

11:26:27 22          A.    Yes, I did.

11:26:28 23          Q.    Okay.  And you provided those names?

11:26:33 24          A.    Yes, I did.

| | |
|---|---|
| 11:26:34 | 1 |
| 11:26:36 | 2 |
| 11:26:42 | 3 |
| 11:26:45 | 4 |
| 11:26:47 | 5 |
| 11:26:49 | 6 |
| 11:26:58 | 7 |
| 11:26:59 | 8 |
| 11:27:02 | 9 |
| 11:27:04 | 10 |
| 11:27:05 | 11 |
| 11:27:06 | 12 |
| 11:27:08 | 13 |
| 11:27:12 | 14 |
| 11:27:14 | 15 |
| 11:27:16 | 16 |
| 11:27:17 | 17 |
| 11:27:17 | 18 |
| 11:27:20 | 19 |
| 11:27:20 | 20 |
| 11:27:21 | 21 |
| 11:27:22 | 22 |
| 11:27:22 | 23 |
| 11:27:28 | 24 |

Q.    Most of them in Maine, correct?

A.    There were some physicians who I had provided who I continued to keep a professional relationship with who were from Boston.

Q.    Who?

A.    I believe Dr. Grottkau, Dr. Hornicek and Dr. Burke.

Q.    Okay.  And aside from those three, the rest were from Maine, correct?

A.    I believe so.  I don't have the list in front of me right now.

Q.    Dr. Shervin, you are aware that only Dr. Burke submitted an evaluation, the other two didn't, to the board?

A.    I'm not aware of that.

         MS. ZUCKER:   Objection.

BY MR. HOLTZ:

Q.    Do you need to take a break?  Are you okay?

A.    I'm okay.

Q.    All right.

A.    Thank you.

Q.    Now, I've asked you, just to be clear on what we're talking about, I've asked you to

1    COMMONWEALTH OF MASSACHUSETTS)

2    SUFFOLK, SS.                    )

3

4        I, Daria L. Romano, RPR, CRR and Notary

5    Public in and for the Commonwealth of

6    Massachusetts, do hereby certify that there came

7    before me on the ^ day of December, 2012, at ^,

8    the person hereinbefore named was duly sworn by

9    me and that such deposition is a true record of

10   the testimony given by the witness.

11       I further certify that I am neither related

12   to nor employed by any of the parties or counsel

13   to this action, nor am I financially interested

14   in the outcome of this action.

15       In witness whereof, I have hereunto set my

16   hand and seal this 31ˢᵀ day of December, 2012.

17

18                    _Daria Romano_

19                    _____

20                    Notary Public

21                    My Commission Expires

22                    March 15, 2013

23

24

1    UNITED STATES DISTRICT COURT

2    DISTRICT OF MASSACHUSETTS

3    Civil Action No. 1:10-cv-10601-DJC

4    - - - - - - - - - - - - - - - - - - - - - - -x

5    NINA SHERVIN, M.D.,

6            Plaintiff,

7        v.

8    PARTNERS HEALTHCARE SYSTEM, INC., THE PRESIDENT

9    AND FELLOWS OF HARVARD COLLEGE (THE HARVARD

10   MEDICAL SCHOOL), MASSACHUSETTS GENERAL

11   PHYSICIANS ORGANIZATION, INC., JAMES H. HERNDON,

12   M.D., AND HARRY E. RUBASH, M.D.,

13           Defendants.

14   - - - - - - - - - - - - - - - - - - - - - - -x

15       CONTINUED DEPOSITION OF NINA SHERVIN, M.D.,

16   a witness called by and on behalf of the

17   Defendants, taken pursuant to the Federal Rules

18   of Civil Procedure, before Daria L. Romano, RPR,

19   CRR and Notary Public in and for the

20   Commonwealth of Massachusetts, at Holtz & Reed,

21   LLP, 225 Friend Street, Boston, Massachusetts,

22   on Thursday, February 14, 2013, commencing at

23   9:48 a.m. to 5:01 p.m.

24

| | | |
|---|---|---|
| 09:56:52 | 1 | you showed up to the operating room at about 4 |
| 09:56:54 | 2 | p.m. on Wednesdays after CORE when most |
| 09:56:56 | 3 | residents get to the operating room at least by |
| 09:56:59 | 4 | 1 p.m." |
| 09:56:59 | 5 | Have I read all that correctly? |
| 09:57:01 | 6 | MS. ZUCKER:  Objection. |
| 09:57:02 | 7 | A.    Yes. |
| 09:57:02 | 8 | Q.    "As you know CORE, finishes at about |
| 09:57:04 | 9 | noon.  You have been reported as not showing up |
| 09:57:07 | 10 | for other OR cases without explanation." |
| 09:57:09 | 11 | Did I read that correctly? |
| 09:57:10 | 12 | **A.    Yes.** |
| 09:57:10 | 13 | Q.    "That you are often late most |
| 09:57:12 | 14 | mornings," and I'll stop there. |
| 09:57:13 | 15 | So my question to you is have you ever |
| 09:57:17 | 16 | missed an OR case during your residency? |
| 09:57:21 | 17 | MS. ZUCKER:  Objection. |
| 09:57:22 | 18 | A.    Have I ever missed an OR case? |
| 09:57:30 | 19 | Q.    Yes, that you were scheduled for. |
| 09:57:32 | 20 | **A.    There may have been an instance where** |
| 09:57:35 | 21 | **I had to be at a meeting where I had to get** |
| 09:57:38 | 22 | **coverage for an OR case that I was hoping to** |
| 09:57:41 | 23 | **attend.** |
| 09:57:46 | 24 | Q.    Other than an instance where you had a |

| | | |
|---|---|---|
| 09:59:58 | 1 | **A.    Sure.** |
| 09:59:58 | 2 | Q.    Okay.  So have you ever been late to |
| 10:00:01 | 3 | an OR case for which you were scheduled? |
| 10:00:04 | 4 | **A.    I may have been, yes.** |
| 10:00:06 | 5 | Q.    Do you know how often that occurred? |
| 10:00:08 | 6 | **A.    I don't.** |
| 10:00:08 | 7 | Q.    Do you remember when? |
| 10:00:09 | 8 | **A.    I remember one instance where I had a** |
| 10:00:14 | 9 | **patient who was very ill on the floor in the** |
| 10:00:16 | 10 | **morning who actually went into -- there was a** |
| 10:00:22 | 11 | **code call, which means like a type of cardiac** |
| 10:00:24 | 12 | **arrest, and I was caught up with that patient on** |
| 10:00:29 | 13 | **the floor, and I -- but there may have been** |
| 10:00:32 | 14 | **other instances like that.** |
| 10:00:34 | 15 | Q.    How many times do you believe you were |
| 10:00:35 | 16 | late to an OR case for which you were scheduled? |
| 10:00:38 | 17 | **A.    I don't know.** |
| 10:00:39 | 18 | Q.    Give me your best estimate sitting |
| 10:00:40 | 19 | here today. |
| 10:00:41 | 20 | **A.    It wasn't that often.** |
| 10:00:42 | 21 | Q.    Does that mean less than 10 during |
| 10:00:45 | 22 | your residency? |
| 10:00:47 | 23 | MS. ZUCKER:  Objection. |
| 10:00:49 | 24 | A.    Residency's long.  I can't give you a |

| | | |
|---|---|---|
| 10:20:42 | 1 | A.    I believe so.  I'm not sure if they're |
| 10:20:45 | 2 | mandatory, but we try very hard to get there. |
| 10:20:47 | 3 | Q.    Did you ever miss an anatomy course? |
| 10:20:49 | 4 | A.    I may have. |
| 10:20:50 | 5 | Q.    How many times? |
| 10:20:51 | 6 | A.    I can't remember. |
| 10:20:56 | 7 | Q.    More than 10? |
| 10:20:57 | 8 | MS. ZUCKER:  Objection. |
| 10:20:57 | 9 | A.    I can't remember the exact number, but |
| 10:20:58 | 10 | there's times, again, if I were caught up |
| 10:21:01 | 11 | clinically that I couldn't make it to the |
| 10:21:02 | 12 | course. |
| 10:21:02 | 13 | Q.    Did you ever miss a lecture by a |
| 10:21:05 | 14 | resident? |
| 10:21:06 | 15 | A.    I may have. |
| 10:21:07 | 16 | Q.    Did you ever miss lectures by |
| 10:21:10 | 17 | attendings? |
| 10:21:10 | 18 | A.    I may have been. |
| 10:21:11 | 19 | Q.    Were there visiting attendings who |
| 10:21:13 | 20 | also spoke at lectures? |
| 10:21:15 | 21 | A.    Sometimes, I think so, yes. |
| 10:21:18 | 22 | Q.    Did you ever miss any of those? |
| 10:21:19 | 23 | A.    I tried not to, but I may have, again, |
| 10:21:22 | 24 | if I were caught up clinically. |

| | | |
|---|---|---|
| 10:21:23 | 1 | Q. Are those considered grand rounds? |
| 10:21:25 | 2 | A. No. |
| 10:21:26 | 3 | Q. Did you ever miss grand rounds? |
| 10:21:29 | 4 | A. I may have if I were on vacation or if |
| 10:21:34 | 5 | I were, again, caught up clinically. |
| 10:21:36 | 6 | But, again, I wouldn't mostly miss the |
| 10:21:38 | 7 | whole thing, I might be late at them. But, |
| 10:21:41 | 8 | again, if I were -- if I had to be at another |
| 10:21:44 | 9 | hospital -- residency is a very big residency |
| 10:21:47 | 10 | program, so it's multiple hospitals that are |
| 10:21:50 | 11 | spread apart. So if I have to be somewhere |
| 10:21:53 | 12 | clinically and to make sure I was there on time, |
| 10:21:55 | 13 | I may have missed a CORE or a class or a lecture |
| 10:21:59 | 14 | in order to make sure that I perform my clinical |
| 10:22:02 | 15 | duties. |
| 10:22:04 | 16 | Q. So it's true that you were also on |
| 10:22:10 | 17 | occasion late for grand rounds? |
| 10:22:11 | 18 | A. I probably was. |
| 10:22:12 | 19 | Q. And for anatomy courses, various |
| 10:22:15 | 20 | anatomy courses? |
| 10:22:16 | 21 | A. I probably was. |
| 10:22:17 | 22 | Q. And lectures? |
| 10:22:18 | 23 | A. I may have been, yes. |
| 10:22:22 | 24 | Q. Dr. Herndon says in the letter marked |

| | | |
|---|---|---|
| 10:22:31 | 1 | Exhibit 23 in the middle of that second |
| 10:22:34 | 2 | paragraph on page one that you missed |
| 10:22:42 | 3 | conferences frequently. |
| 10:22:44 | 4 | **A.    Where is that?** |
| 10:22:47 | 5 | Q.    Do you see it here (Indicating)?  "You |
| 10:23:05 | 6 | were often late most mornings for a.m. rounds." |
| 10:23:08 | 7 | Do you see that? |
| 10:23:11 | 8 | MS. ZUCKER:  Objection. |
| 10:23:12 | 9 | A.    Yes. |
| 10:23:12 | 10 | Q.    "And that you miss conferences |
| 10:23:14 | 11 | frequently." |
| 10:23:15 | 12 | Do you see that part?  Did I read that |
| 10:23:17 | 13 | correctly? |
| 10:23:17 | 14 | **A.    Yes.** |
| 10:23:17 | 15 | Q.    Is that true? |
| 10:23:18 | 16 | MS. ZUCKER:  Objection. |
| 10:23:19 | 17 | A.    Again, this is very vague.  I may have |
| 10:23:22 | 18 | missed a conference if I were clinically |
| 10:23:26 | 19 | obligated to be somewhere else or I was sick or |
| 10:23:29 | 20 | I was on vacation. |
| 10:23:30 | 21 | Q.    He's alleging something different. |
| 10:23:33 | 22 | He's saying pretty directly that you miss |
| 10:23:36 | 23 | conferences frequently.  And my question is is |
| 10:23:39 | 24 | that true? |

```
 1   COMMONWEALTH OF MASSACHUSETTS)

 2   SUFFOLK, SS.                    )

 3

 4       I, Daria L. Romano, RPR, CRR and Notary

 5   Public in and for the Commonwealth of

 6   Massachusetts, do hereby certify that there came

 7   before me on the 14th day of February, 2013, at

 8   9:49 a.m., the person hereinbefore named was

 9   duly sworn by me and that such deposition is a

10   true record of the testimony given by the

11   witness.

12       I further certify that I am neither related

13   to nor employed by any of the parties or counsel

14   to this action, nor am I financially interested

15   in the outcome of this action.

16       In witness whereof, I have hereunto set my

17   hand and seal this     day of February, 2013.

18

19                    Daria Romano

20                    _____

21                    Notary Public

22                    My Commission Expires

23                    March 15, 2013

24
```

O'Brien & Levine Court Reporting
Worldwide Coverage / 888.825.3376 / mail@court-reporting.com

1    UNITED STATES DISTRICT COURT

2    DISTRICT OF MASSACHUSETTS

3    Civil Action No. 1:10-cv-10601-DJC

4    - - - - - - - - - - - - - - - - - - - - - - -x

5    NINA SHERVIN, M.D.,

6                        Plaintiff,

7        v.

8    PARTNERS HEALTHCARE SYSTEM, INC., THE PRESIDENT

9    AND FELLOWS OF HARVARD COLLEGE (THE HARVARD

10   MEDICAL SCHOOL), MASSACHUSETTS GENERAL

11   PHYSICIANS ORGANIZATION, INC., JAMES H. HERNDON,

12   M.D., AND HARRY E. RUBASH, M.D.,

13                        Defendants.

14   - - - - - - - - - - - - - - - - - - - - - - -x

15                     VOLUME 4

16            CONTINUED DEPOSITION OF NINA

17   SHERVIN, M.D.,witness called by and on behalf of

18   the Defendants, taken pursuant to the Federal

19   Rules of Civil Procedure, before Daria L.

20   Romano, RPR, CRR and Notary Public in and for

21   the Commonwealth of Massachusetts, at Murphy &

22   Riley, P.C., 101 Summer Street, Boston,

23   Massachusetts, on Tuesday, April 9, 2013,

24   commencing at 8:19 a.m. to 3:10 p.m.

Case 1:13-mc-00023-UA-LPA   Document 1-2   Filed 04/25/13   Page 18 of 25

09:48:27 1          Q.    Where is that?

09:48:28 2          A.    At Children's Hospital.

09:48:33 3          Q.    And tell me what you remember about

09:48:36 4    the meeting.    Who said what?

09:48:50 5                    MS. ZUCKER:   Objection.

09:48:59 6          A.    So I believe this was a review by

09:49:08 7    Dr. Kasser of the past few rotations and how he

09:49:21 8    thought I was doing in the program.    So we

09:49:27 9    talked about the previous rotations, we talked

09:49:33 10   about how my faculty evaluations were.    He

09:49:46 11   commended me on having good faculty evaluations.

09:49:52 12              We may have talked about the ER hand

09:49:55 13   case, but I can't remember if it was in that

09:49:56 14   meeting or another meeting specifically.

09:50:06 15              He brought up concerns for my

09:50:09 16   relationship with Dr. Herndon being strained or

09:50:15 17   my relationship with my peers.    He brought up

09:50:17 18   concerns about that possibly affecting boards,

09:50:22 19   my boards.    And I didn't know what he meant by

09:50:25 20   that.

09:50:30 21         Q.    What specifically did he say about how

09:50:32 22   your relationship with Dr. Herndon could affect

09:50:35 23   your boards?

09:50:35 24         A.    He said that my relationship with

09:50:40  1    Dr. Herndon is strained because of my complaint

09:50:44  2    and my challenging Dr. Herndon.

09:50:48  3              He told me that --

09:50:51  4         Q.   I'm asking about the effect on the

09:50:53  5    boards, that piece.

09:50:54  6         A.   He didn't go into the specific

09:50:56  7    details, but he said he's concerned about the

09:50:58  8    boards because your peers, including your fellow

09:51:03  9    attendings, will be asked about your

09:51:06 10    professionalism before you sit for the boards.

09:51:11 11              And I didn't know at that point what

09:51:13 12    it meant.   I was just about to sit for my

09:51:15 13    written boards, so I didn't know what that

09:51:18 14    specifically meant.

09:51:20 15         Q.   As we sit here today, do you have any

09:51:22 16    evidence that anybody associated with HCORP sent

09:51:26 17    any adverse information to the board?

09:51:29 18              MS. ZUCKER:   Objection.

09:51:30 19         A.   I'm sorry?

09:51:32 20         Q.   When you're talking about the board,

09:51:34 21    you're talking about the ABOS?

09:51:35 22         A.   American Board of Orthopedic Surgery.

09:51:41 23         Q.   As you sit here today, do you have any

09:51:43 24    evidence that anybody from the program, other

09:51:47 1    residents, Dr. Herndon, Dr. Rubash, anybody

09:51:51 2    associated with this case has said negative

09:51:57 3    information to the ABOS about you?

09:52:00 4                MS. ZUCKER:   Objection.

09:52:01 5        A.    I don't have any evidence, but it's a

09:52:04 6    possibility.

09:52:04 7        Q.    How about general evidence?   What

09:52:06 8    makes it a possibility?   What is it that you

09:52:09 9    have in your mind that makes it a possibility?

09:52:13 10               MS. ZUCKER:   Objection.

09:52:14 11       A.    I believe I testified to this before,

09:52:17 12   that the American Board of Orthopedic Surgery

09:52:19 13   sends a list of the candidates who are planning

09:52:22 14   to sit for the oral boards of that year to all

09:52:26 15   members of the American Board of Orthopedic

09:52:29 16   Surgery, so that's including residents who have

09:52:32 17   passed in addition to attendings, and they list

09:52:38 18   persons -- candidates by states, and they ask

09:52:43 19   for any input that they may receive with regards

09:52:50 20   to professionalism, et cetera.   I don't know the

09:52:54 21   specific wording of it, but I believe this was

09:52:58 22   one of those.

09:52:58 23       Q.    Why do you think it's a possibility

09:53:00 24   that somebody from HCORP or Partners or the

Case 1:13-mc-00023-UA-LPA   Document 1-2   Filed 04/25/13   Page 21 of 25

09:53:03 1    medical school provided negative information

09:53:06 2    about you to the ABOS?

09:53:08 3        A.    I think it's a possibility because of

09:53:12 4    the way that I was treated in the program.

09:53:15 5            I believe that when I brought up

09:53:19 6    gender bias and I challenged Dr. Herndon, I

09:53:23 7    don't think that made him very happy.  I believe

09:53:26 8    after that I was targeted.  I was almost

09:53:33 9    terminated for a miscommunication issue that

09:53:37 10   they had brought up, trumped-up charges were

09:53:41 11   being brought up.  When they were looked into

09:53:45 12   and not found valid, more charges were -- they

09:53:52 13   looked into anything that I could have done to

09:54:01 14   justify their actions, including Dr. Herndon and

09:54:04 15   the executive committee.

09:54:06 16           So I felt like I was being punished,

09:54:08 17   and I think as a possibility that this may be

09:54:11 18   another form.

09:54:13 19       Q.    Has anyone told you that anybody from

09:54:17 20   Partners or the hospital or HCORP or the medical

09:54:20 21   school provided adverse information about you to

09:54:24 22   the ABOS?

09:54:25 23       A.    No.

09:54:26 24       Q.    Have you seen any documents of any

09:54:28  1    type, E mails, letters, any type of document
09:54:33  2    that would suggest that anybody from the
09:54:37  3    hospital, Partners, HCORP, the medical school
09:54:40  4    provided adverse information about you to ABOS?
09:54:45  5         A.    I know in the application of ABOS I
09:54:46  6    have to list my residency director or directors,
09:54:49  7    and I listed Dr. Herndon and Dr. Kasser.    I
09:54:57  8    don't know specifically what was written.
09:55:01  9         Q.    And other than what you just testified
09:55:03 10    to, any other information to make you think that
09:55:07 11    anybody associated with the residency and the
09:55:09 12    hospital or Partners or the medical school
09:55:11 13    provided negative information about you to ABOS?
09:55:14 14         A.    When I sat in my meeting back in the
09:55:19 15    spring of 2007 with Dr. Rubash and I complained
09:55:24 16    of Dr. Herndon's conduct of me not behaving the
09:55:30 17    way women behave when he disciplines them, he
09:55:32 18    told me at the end to not get legal -- to not
09:55:36 19    pursue a lawsuit, that it would not work to my
09:55:39 20    favor, and it would not affect my career in a
09:55:41 21    positive way.
09:55:42 22              So that being said, it's a possibility
09:55:47 23    to me, I'm not for certain that they did, but I
09:55:50 24    think it's a possibility.

```
 1    COMMONWEALTH OF MASSACHUSETTS)
 2    SUFFOLK, SS.                    )
 3
 4         I, Daria L. Romano, RPR, CRR and Notary
 5    Public in and for the Commonwealth of
 6    Massachusetts, do hereby certify that there came
 7    before me on the 9th day of April, 2013, at 8:19
 8    a.m., the person hereinbefore named was duly
 9    sworn by me and that such deposition is a true
10    record of the testimony given by the witness.
11         I further certify that I am neither related
12    to nor employed by any of the parties or counsel
13    to this action, nor am I financially interested
14    in the outcome of this action.
15         In witness whereof, I have hereunto set my
16    hand and seal this      day of April, 2013.
17
18
19                        _____
20                        Notary Public
21                        My Commission Expires
22                        February 20, 2020
23
24
```

**[PLAINTIFF'S DEPOSITION TRANSCRIPT, APRIL 23, 2013]**

**[Transcript pending, but will be provided to
the Court immediately upon receipt.]**