IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NINA SHERVIN, M.D.,                )
                                   )
            Plaintiff,             )
                                   )
       v.                          )        1:13MC23
                                   )
PARTNERS HEALTHCARE SYSTEM,        )
INC., THE PRESIDENT AND FELLOWS    )
OF HARVARD COLLEGE (THE HARVARD    )
MEDICAL SCHOOL), MASSACHUSETTS     )
GENERAL PHYSICIANS ORGANIZATION,   )
INC., JAMES H. HERNDON, M.D.,      )
and HARRY E. RUBASH, M.D.,         )
                                   )
            Defendants.            )

**MEMORANDUM OPINION AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

The instant matter comes before the Court for disposition of Defendants' Motion to Compel the American Board of Orthopaedic Surgery, Inc. to Produce Records Concerning Plaintiff's Application for Part II of Her Board Certification Examination (Docket Entry 1). For the reasons that follow, the Court will deny the instant Motion.

BACKGROUND

The instant Motion to Compel arises from an action pending in the District of Massachusetts. (See Docket Entry 1 at 1.) "The Defendants in this case are the institutions with oversight of [the Harvard Combined Orthopaedics Residency Program ('HCORP')], Partners Healthcare System, Inc. (hereinafter 'Partners') and The

President and Fellows of Harvard College (Harvard Medical School) [], as well as the physicians' group at Partners' Massachusetts General Hospital ('MGH'), the Massachusetts General Hospital Physicians Organization (hereinafter 'MGPO'), and HCORP's then Residency Director, James E. Herndon, M.D. [] in addition to the Chief of the Department of Orthopedics at MGH, Harry E. Rubash, M.D. []." (Docket Entry 3 at 1-2 n.1.) Plaintiff, "an orthopedic surgeon who trained as a resident in [HCORP]" (id. at 1), "alleges the Defendants discriminated against her on the basis of gender during the course of her residency" (id. at 1-2). Specifically, Plaintiff "alleges state and federal claims of gender discrimination and retaliation, as well as state law claims for interference with advantageous/contractual relations." (Docket Entry 1 at 2.)

As part of those claims, Plaintiff "alleges that individuals associated with her residency may have contributed negative information about her [to the American Board of Orthopaedic Surgery, Inc. ('ABOS')] (or that they had a negative impact on her consideration by failing to contribute to her application at all), affecting [Plaintiff's] ability to sit for the Part II Boards." (Docket Entry 3 at 15.)[1] In connection with that allegation, "[i]n

---

[1] "Board certification requires, among other qualifications, a written examination ('Part I'), and oral examination ('Part II'), and peer review information and evaluations from orthopedic surgeons and other hospital staff."
(continued...)

-2-

June of 2012, two of the Defendants, Partners and [] MGPO[] issued a third party subpoena seeking a broad range of documents from [ABOS] concerning [Plaintiff's] efforts to become Board-certified in her specialty."  (Id. at 2.)  Partners and MGPO (hereinafter collectively referred to as "Defendants") now "move this Court to compel [ABOS], which maintains its principal place of business in Chapel Hill, North Carolina, to produce documents pursuant to [that] [s]ubpoena.  Specifically, Defendants seek to compel the production of documents concerning Plaintiff's application to sit for Part II of her ABOS Board Certification Exam . . ., which include percipient reports on Plaintiff's work ethic and performance, based on peer review authored by her medical colleagues and supervisors."  (Docket Entry 1 at 1-2 (citation omitted).)  The subpoena purports to require production of those documents at the office of Defendants' counsel in Boston, Massachusetts.  (See Docket Entry 1-1 at 1.)

The Court held a hearing on the instant Motion.  (See Docket Entry dated Jul. 15, 2013.)  During said hearing, Defendants agreed to amend the subpoena to reflect the office of their counsel in

---

[1](...continued)
(Docket Entry 3 at 11.)  In this case, ABOS deferred Plaintiff's application for board certification "because the peer review information received in connection with [Plaintiff's] application was insufficient to determine whether [she] demonstrate[s] the competence in orthopaedic surgery and adherence to acceptable ethical and professional standards as required by the Rules and Procedures of [ABOS]."  (Docket Entry 3-15 at 2.)

-3-

Chapel Hill, North Carolina, as the place of production. (Id.) They further conceded that ABOS preserved its objections to the subpoena. (Id.) At the conclusion of the hearing, the Court orally ordered that, to the extent Defendants seek discovery of documents from ABOS for the purpose of uncovering negative reviews of Plaintiff's work by persons who dealt with Plaintiff after she concluded her work with Defendants based on the theory that such evidence might help show that Plaintiff performed poorly with Defendants, the Court would deny Defendants' instant Motion because such discovery would be cumulative, speculative, unlikely to lead to admissible evidence, and disproportionately intrusive in light of its limited probative value. (Id.)

However, the Court further noted that information concerning whether the fact of Plaintiff's probation during her residency at HCORP or any information submitted to or withheld from ABOS by Defendants during the peer review process factored into ABOS's decision to defer Plaintiff's application might qualify as discoverable. (Id.) The Court directed the Parties to attempt to reach an agreement as to any such information. (Id.) The Parties have now indicated to the Court that they could not reach an agreement. (See Docket Entry 17 at 1.)

STANDARD

The Federal Rules of Civil Procedure provide for the issuance of subpoenas to non-parties. See Fed. R. Civ. P. 45. The scope of

discovery under Federal Rule of Civil Procedure 45 matches that under Federal Rule of Civil Procedure 26, see Kinetic Concepts, Inc. v. ConvaTec Inc., 268 F.R.D. 226, 240 (M.D.N.C. 2010) (citing Fed. R. Civ. P. 45 advisory committee's notes, 1991 Amend., Subdiv. (a)), which allows for the discovery of "any nonprivileged matter that is relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1). Under this standard, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. However,

> [e]ven assuming that [] information is relevant (in the broadest sense), the simple fact that [it] is discoverable . . . does not mean that discovery must be had. On its own initiative or in response to a motion for protective order under [Federal] Rule [of Civil Procedure] 26(c), a district court may limit . . . "discovery methods otherwise permitted" . . . if it concludes that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit."

Nicholas v. Wyndham Int'l Inc., 373 F.3d 537, 543 (4th Cir. 2004) (quoting Fed. R. Civ. P. 26(b)(2)(C)). Additionally,

> [a] court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including [as pertinent here] . . . (A) forbidding the disclosure or discovery;

-5-

> (C) prescribing a discovery method other than the one requested by the party seeking discovery; . . . [or] (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters . . . .

Fed. R. Civ. P. 26(c)(1).

In sum, when conducting an analysis under Federal Rule of Civil Procedure 45, the Court "is required to apply the balancing standards: relevance, need, confidentiality and harm. Even if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit." Insulate Am. v. Masco Corp., 227 F.R.D. 427, 432 (W.D.N.C. 2005) (citations omitted).

## DISCUSSION

Defendants' subpoena requests:

> 1. Any and all evaluations, recommendations, references, or communications from Goodall Hospital or its affiliates or its physicians working at Goodall Hospital to [ABOS] relating to [Plaintiff] including any documents, correspondence, notes, evaluations or communications relating to [Plaintiff's] application to sit for Part II of the Boards.
>
> 2. Any and all evaluations, recommendations, references, or communications from any physician or other person to [ABOS] relating to [Plaintiff] including any evaluations, recommendations, references, or communications relating to [Plaintiff's] application to sit for Part II of the Boards.

-6-

(Docket Entry 1-1 at 2.)  Defendants argue that the requested records "will go substantial lengths to unsheathing Plaintiff's claims of trumped up charges based on gender discrimination and other illicit activities."  (Docket Entry 1 at 9.)  More specifically, they contend that Plaintiff "has put these matters at issue by claiming that she exhibited no deficiencies as a resident at HCORP, but was instead placed on probation based on illicit discriminatory motives[, yet] it has been discovered, in part, that Plaintiff's [sic] exhibited similar behavior at Goodall as that which resulted in her probation at HCORP."  (Id. at 15.)

ABOS, on the other hand, contends that Defendants already possess the relevant information, that they have failed to articulate a need for the requested documents, and that the resulting harm to ABOS's certification process that disclosure would cause outweighs any benefit Defendants might gain from obtaining the requested documents.  (Docket Entry 2 at 1-2.)  The Court agrees with ABOS.

Defendants want communications from individuals associated with Goodall Hospital to ABOS in order to show that Plaintiff's job performance while at Goodall Hospital suffered from deficiencies similar to those Defendants allege occurred during her residency. (See Docket Entry 1 at 15.)  Defendants already have deposed an official from Goodall Hospital.  (See Docket Entry 1-3.)  Moreover, they have Plaintiff's application to ABOS, which lists her

-7-

supervisors at Goodall Hospital (see Docket Entry 1-4 at 2) and individuals at Goodall Hospital familiar with Plaintiff's work (id. at 3-4). Defendants also possess the names of the individuals Plaintiff listed as references. (See Docket Entry 1-5.) In addition, attorneys for ABOS confirmed which individuals listed on Plaintiff's application in fact submitted responses. (See Docket Entry 2-2 at 32-40.) Defendants can obtain information concerning Plaintiff's performance at Goodall Hospital and related reports made to ABOS directly from Goodall Hospital and its relevant personnel.

Furthermore, information regarding Plaintiff's performance at Goodall Hospital would provide Defendants with little information of value to the resolution of issues legitimately raised in this case. Evidence of Plaintiff's alleged deficiencies at her job subsequent to her residency likely would not qualify as admissible to show that Plaintiff exhibited similar deficiencies during her residency. See Fed. R. Evid. 404(a). On the other hand, requiring ABOS to disclose documents it obtained under a promise of confidentiality "would likely adversely affect the willingness of peers to provide such information in the future." (Docket Entry 2 at 8.) Such a chilling effect on ABOS's peer review process could undermine its "ability to fulfill its mission to protect the public by evaluating the initial and continuing qualifications of

-8-

orthopaedic surgeons." (Id.)[2]  Under these circumstances, the Court will not compel a response to either of Defendants' requests based on the theory that negative information concerning Plaintiff's subsequent job performance would show how she performed during her residency.

Defendants present two additional theories of relevance for the requested peer review materials.  First, they argue that Plaintiff has alleged as part of her retaliation claim that Plaintiff's residency director (see Docket Entry 1-4 at 5) told Plaintiff that challenging her probation would put her "at risk for [] being able to sit for [her] oral boards" (Docket Entry 1-2 at 2) and Defendants should have access to the materials anyone associated with them provided to ABOS in order to rebut the inference that Defendants sabotaged Plaintiff's application (Docket Entry 1 at 5-9).  Second, Defendants contend that Plaintiff could claim the fact of her deferral by ABOS as part of her damages

---

[2] Federal law does not recognize any absolute privilege against discovery of medical peer review records.  See Virmani v. Novant Health Inc., 259 F.3d 284 (4th Cir. 2001).  However, "[a]s Congress has recognized [in other contexts], [medical] peer review materials are sensitive and inherently confidential, and protecting that confidentiality serves an important public interest." United States v. Harris Methodist Fort Worth, 970 F.2d 94, 103 (5th Cir. 1992).  In light of "the sensitive nature of the information in [medical] peer review records . . ., while clearly no federally recognized privilege stands in the way of obtaining this information, the shield of confidentiality that normally protects this information justifies greater caution for the Court in exercising its discretion regarding exposing the records to public scrutiny." Zamorano v. Wayne State Univ., No. 07-12943, 2008 WL 2999546, at *3 (E.D. Mich. Aug. 1, 2008) (unpublished) (internal quotation marks omitted) (quashing subpoena to nonparty).

against Defendants and that the requested materials therefore could help Defendants show that they did not in fact cause Plaintiff's deferral. (Id. at 8 n.7.)

The first of these two theories fails because Plaintiff's Amended Complaint contains no allegation of retaliation in connection with her ABOS application. (See Shervin v. Partners Healthcare Sys., Inc., et al., CA No. 1:10-cv-10601-RWZ, Docket Entry 38.) In fact, Plaintiff filed her Amended Complaint on July 13, 2010 (see id. at 34), over three months before she submitted her application to ABOS (see Docket Entry 1-4 at 5). Thus, to the extent Defendants seek to use the requested materials to defend against a retaliation claim, they have no significant need.

As to the second of the foregoing theories, if Plaintiff could prove ABOS deferred her application because of her probation or negative reviews from Defendants, she theoretically could collect damages as a result. However, the materials requested by Defendants would not shed much light on this issue. First, ABOS has proffered, and the Court has no reason to doubt, that "no one associated with [Plaintiff's] residency program or [Defendants] Partners [], Harvard Medical School, [MGH] and the individual named Defendants [] submitted any adverse peer review information to the Board." (Docket Entry 2 at 4.) Furthermore, at the hearing before the Court, counsel for ABOS proffered (and, again, the Court has no basis to question) that no one associated with Defendants submitted

-10-

<u>any</u> peer review information whatsoever concerning Plaintiff. Moreover, Plaintiff notified ABOS of the fact of her probation in her application (<u>see</u> Docket Entry 1-4 at 5), a document which Defendants already have. Under these circumstances, Defendants do not need the substance of the responses ABOS received from individuals lacking any affiliation with Defendants to establish that responses from Defendants failed to cause ABOS to defer Plaintiff's application.

As a final matter, in her filing partially supporting Defendants' instant Motion, Plaintiff suggested that the fact that no one associated with her residency program submitted peer review materials to ABOS may have adversely affected her application. (Docket Entry 3 at 15-16.) However, the records Defendants seek via the instant subpoena would not aid them in defending against such an assertion because the requested items would not show what factors led ABOS to defer Plaintiff's application. Moreover, ABOS has a strong interest in maintaining the confidentiality of the peer review responses it received. Given these considerations, the Court will not compel production of such materials.

CONCLUSION

Under the applicable balancing standard, the potential harm caused by compelling discovery of the requested documents outweighs any legitimate benefit Defendants would derive.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Compel the American Board of Orthopaedic Surgery, Inc. to Produce Records Concerning Plaintiff's Application for Part II of her Board Certification Examination (Docket Entry 1) is **DENIED**.

                                    /s/ L. Patrick Auld
                                        **L. Patrick Auld**
                            **United States Magistrate Judge**

October 15, 2013